1  ALAN M. RITCHIE (298989)
2  aritchie@pilgrimchristakis.com
   PILGRIM CHRISTAKIS LLP
3  321 N. Clark Street, 26th Floor
   Chicago, Illinois 60654
4  Telephone: (312) 924-1773
5  Facsimile: (312) 379-8547

6
   Attorneys for Defendant
7  POWERLINE FUNDING LLC

8             IN THE UNITED STATES DISTRICT COURT
9          FOR THE CENTRAL DISTRICT OF CALIFORNIA
                     SOUTHERN DIVISION
10

11 MARIANO BENITEZ, individually
   and on behalf of others similarly        Case No. 8:19-cv-00098
12 situated,
13                                           **DEFENDANT POWERLINE
                Plaintiff,                   FUNDING LLC'S REPLY BRIEF IN
14                                           SUPPORT OF ITS MOTION TO
         vs.                                 DISMISS THE CLAIMS OF ALL
15                                           PUTATIVE NON-CALIFORNIA
16                                           CLASS MEMBERS, OR IN THE
   POWERLINE FUNDING LLC, a New              ALTERNATIVE, TO STRIKE
17 York limited liability company,          PLAINTIFF'S CLASS
                                             ALLEGATIONS**
18              Defendants.
19
20                                           Date:      June 7, 2019
                                             Time:      10:30 a.m.
21                                           Judge:     Hon. Josephine L. Staton
                                             Location:  Courtroom 10A
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................ 1

ARGUMENT .............................................................................................. 2

   I.   This Court Should Join With The Well-Reasoned Decisions Applying *Bristol-Myers* To The Class Context And Dismiss The Nonresident Class Members' Claims For Lack Of Personal Jurisdiction ....................................... 2

      A.  The party/nonparty distinction ignores the constitutional limits on personal jurisdiction ................................................................ 3

      B.  Rule 23 does not supplant Powerline's due process rights...................... 5

      C.  The same interstate sovereignty and federalism concerns underpinning *Bristol-Myers* are present here ................................................. 6

      D.  The rationale of *Bristol-Myers* should apply to class actions................ 10

   II.  The Pendent Personal Jurisdiction Doctrine Is Inapplicable .......................... 11

   III. Plaintiff's "Burden" Argument Ignores The Constitutional Limits On Personal Jurisdiction And The Clear Burdens Powerline Will Face Defending A Nationwide Class Action........................................................ 13

   IV. Powerline's Motion To Strike Is Not Premature ............................................. 15

CONCLUSION............................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*
  368 F.3d 1174 (9th Cir. 2004) .......................................................................... 11, 12

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*
  2015 WL 1266787 (C.D. Cal. Mar 18, 2015) ......................................................... 15

*Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*
  2018 WL 3474444 (N.D. Ill. July 19, 2018) ........................................................... 10

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997) ................................................................................................. 6

*Burger King Corp. v. Rudzeqicz*
  471 U.S. 462 (1985) ................................................................................................. 8

*Chavez v. Church & Dwight Co., Inc.*
  2018 WL 2238191 (N.D. Ill. May 16, 2018) ...................................................... 4, 10

*Coopers & Lybrand v. Livesay*
  437 U.S. 463 (1978) ............................................................................................... 14

*Daimler AG v. Bauman*
  571 U.S. 117 (2014) ................................................................................................. 7

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*
  2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) ........................................................ 7

*Forsythe v. Overmyer*
  576 F.2d 779 (9th Cir. 1978) ................................................................................. 14

*Greene v. Mizuho Bank, Ltd.*
  289 F. Supp. 3d 870 (N.D. Ill. 2017) .................................................................... 12

*In re Chinese-Mfgd. Drywall Prod. Liab. Litig.*
  2017 WL 5971622 (E.D. La. Nov. 30, 2017) .......................................................... 5

*In re Dental Supplies Antitrust Litig.*

2017 WL 4217115 (E.D.N.Y Sept. 20, 2017).................................................... 1, 11

*Muir v. Nature's Bounty (DE), Inc.*
  2018 WL 3647115 (N.D. Ill. Aug. 1, 2018)........................................... 10

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*
  484 U.S. 97 (1987) .................................................................................. 8

*Ortiz v. Fibreboard Corp.*
  527 U.S. 815 (1999) ................................................................................. 5

*Pebble Beach Co. v. Caddy*
  453 F.3d 1151, 1154 (9th Cir. 2006)....................................................... 13

*Practice Mgmt. Support Services, Inc. v. Cirque du Soleil, Inc.*
  301 F. Supp. 3d 840 (N.D. Ill. 2018) ...................................................... 6

*Rinky Dink, Inc. v. Elec. Merch. Sys. Inc.*
  2014 WL 12103245 (W.D. Wash. Nov. 4, 2014) .................................... 8

*Roy v. FedEx Ground Package Sys., Inc.*
  353 F. Supp. 3d 43 (D. Mass. 2018) ....................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*
  374 F.3d 797, 800 (9th Cir. 2004)........................................................... 9

*Sloan v. General Motors LLC*
  287 F. Supp. 3d 840 (N.D. Cal. 2018) ........................................... 9, 10, 13

*Walden v. Fiore*
  571 U.S. 277 (2014) ................................................................................. 4

**Statutes**

47 U.S.C. § 227(e)(6)(E)(ii) .................................................................... 10

Fed. R. Civ. P. 23(a)-(b) .......................................................................... 6

Fed. R. Civ. P. 4(k)(1) ............................................................................. 8

Judiciary Act of 1789, ch. 20 § 11, 1 Stat. 73, 79 .................................. 9

# <u>INTRODUCTION</u>

The district courts are split on whether *Bristol-Myers* applies to class actions. Unsurprisingly, Plaintiff urges this Court to side with those courts that have circumvented application of *Bristol-Myers*, and found specific jurisdiction exists over out-of-state plaintiffs' claims that have no connection to the defendant's contacts to the forum. However, the justifications employed by those decisions—and summarily discussed by Plaintiff in his Opposition—are not well-reasoned and thus unpersuasive.  Rather, these justifications rely on distinctions that plainly ignore the constitutional limits on personal jurisdiction or miss the point of *Bristol-Myers* entirely. *Bristol-Myers* explains that the exercise of specific jurisdiction requires a connection between each plaintiffs' claim and the forum state, which Plaintiff readily admits is absent here. And there is simply nothing in the *Bristol-Myers* opinion that provides any plausible or justifiable grounds for distinguishing class actions from the "mass action" that was before the Supreme Court. Plaintiff's urging of some kind of lesser due process requirement in the class context should be rejected, as courts have explained that the constitutional requirements of due process do not "wax and wane" depending on whether the complaint is individual or on behalf of a class; personal jurisdiction in either case must comport with due process. *In re Dental Supplies Antitrus Litig*. 2017 WL 4217115, at *9 (E.D.N.Y Sept. 20, 2017). For these reasons, this Court should side with the growing number of well-reasoned decisions that have applied *Bristol-Myers* to the class context and dismiss the claims of the nonresident class members.

*Bristol-Myers* aside, Plaintiff argues that this Court can nonetheless exercise personal jurisdiction over Powerline with respect to the claims of nonresident class

1

members under the pendent personal jurisdiction doctrine simply because those claims share factual similarities with Plaintiff's claims. But this argument is unavailing for three reasons. First, the pendent jurisdiction doctrine is plainly inapplicable to this case. Second, expanding the pendent jurisdiction doctrine to cases like this would blur the line between general and specific jurisdiction in contravention of established personal jurisdiction principles. And third, the Supreme Court squarely rejected Plaintiff's bootstrapping argument—that one person's claims can supply the jurisdictional contacts necessary to support jurisdiction over another person's claims—in *Bristol-Myers*.

Finally, Plaintiff suggests that Powerline will suffer no burden if the Court exercises personal jurisdiction over it with respect to the claims of nonresident class members. But this ignores the constitutional limits on personal jurisdiction and the real burdens Powerline will undoubtedly face if forced to defend against a nationwide class action.

Simply put, Plaintiff offers no persuasive reason to circumvent application of the settled principles of personal jurisdiction announced in *Bristol-Myers*. Powerline's motion should therefore be granted.

## **ARGUMENT**

**I.    This Court Should Join With The Well-Reasoned Decisions Applying *Bristol-Myers* To The Class Context And Dismiss The Nonresident Class Members' Claims For Lack Of Personal Jurisdiction**

District courts around the country are split on whether *Bristol-Myers* applies to class actions. Plaintiff cites to decisions that have opted not to apply *Bristol-Myers* to the class context and urges this Court to side with those opinions. (Opp. at

2

2-4.) However, the justifications offered by these courts to circumvent the application of *Bristol-Myers* are based on distinctions that ignore the constitutional limits on personal jurisdiction (e.g., party/nonparty, class action/mass action) or they miss the point entirely. Thus, for the reasons discussed below, this Court should join the growing number of well-reasoned opinions applying *Bristol-Myers* to the class context and dismiss the claims of the nonresident class members.

### A. The party/nonparty distinction ignores the constitutional limits on personal jurisdiction

As Plaintiff points out, some courts have refused to apply *Bristol-Myers* in the class context because they have viewed the unnamed class members as not true "parties" to the case, and thus their claims should not be considered when determining personal jurisdiction. (*See* Opp. at 2-3.) But this analysis is based on flawed reasoning and is thus unpersuasive. Although those courts correctly point out that unnamed class members may be "parties" for some purposes, but not for others, and that courts routinely do not take unnamed class members into account for the purpose of determining diversity of citizenship for other procedural purposes, these reasons do not justify diluting the due process rights of a defendant. For instance, special rules for diversity jurisdiction implicate the federal's court's power and jurisdiction, not the individual liberty interests of defendants. In contrast, nonnamed plaintiffs should be considered parties for personal jurisdiction purposes because personal jurisdiction concerns a defendant's own personal right to constitutional due process. *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter

of sovereignty, but as a matter of individual liberty."). The question here is not whether this Court has subject matter jurisdiction, or the power to adjudicate class actions, but whether, consistent with the constitutional limits of due process, this Court may exercise specific personal jurisdiction over Powerline with respect to claims that have no connection to California. And the focus of this due process inquiry is on whether Powerline's contacts with the state of California give rise to the claims of the non-California putative class members. *Bristol-Myers*, 137 S.Ct. at 1781. It makes no difference, for the purposes of this due process analysis, that the putative unnamed class members are nominally "absent" before certification—their claims are not.  Specific jurisdiction is a "defendant-focused inquiry," requiring a direct and substantial "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotations omitted). As the Supreme Court concluded, a plaintiff must establish a "connection between the forum and the specific claims at issue." *Brisol-Myers*, 137 S.Ct. at 1781. Ignoring *Bristol-Myers* in the class context would simply be an end-run around its constitutional holding, allowing plaintiffs to force courts to adjudicate claims with no connection to the forum simply by placing an in-state representative at the head of the class. It is unlikely that the Supreme Court will allow these kind of procedural machinations to circumvent its ruling.

Unsurprisingly, many other courts have rejected this party/nonparty analysis, recognizing that the distinction is without a difference with respect to the constitutional limits of personal jurisdiction. *See e.g., Chavez v. Church & Dwight Co., Inc.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) (finding "the reliance of some district courts on the fact that the citizenship of unnamed class members is

4

disregarded for purposes of determining diversity" unpersuasive and applying *Bristol-Myers*). This Court should join those well-reasoned decisions in rejecting the unpersuasive party/nonparty distinction and apply *Bristol-Myers* to this case.

### B.  Rule 23 does not supplant Powerline's due process rights

Plaintiff also cites to a Louisiana district court that differentiated class actions from mass actions based on the "additional due process standards" and "safeguards" provided under Rule 23 of the Federal Rules of Civil Procedure. (Opp. at 3 (citing *In re Chinese-Mfgd. Drywall Prod. Liab. Litig.*, 2017 WL 5971622, at *4 (E.D. La. Nov. 30, 2017).) But this analysis misses the point. Rule 23 offers no substantive due process protections to defendants whatsoever and cannot otherwise be invoked to expand a court's personal jurisdiction. Rule 23's "procedural protections" are instead designed "to protect the rights of *absent class members*."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847 (1999) (discussing notice and opt-out procedures) (emphasis added). Those protections ensure that class members are not bound by judgments extinguishing their individual claims without (among other things) notice and adequate representation. *Id.* at 848, n. 24. But that does nothing to protect the due process rights of defendants. The same is true of Rule 23's other criteria. Powerline's due process rights are not protected by requiring Plaintiff to prove that his putative class is "numerous"; that "common" questions will "predominate" over "individual" issues; or that "a class action is superior to other available methods." Fed. R. Civ. P. 23(a)-(b). Even if these class requirements contribute to procedural fairness, they are no substitute for the safeguards of due process. The constitutional protections for defendants cannot be lessened simply

because plaintiffs in class actions must, by rule, satisfy the procedural requirements of certifying a class.

Nor can Rule 23 be interpreted or applied to curtail Powerline's substantive due process rights or to expand this Court's jurisdiction. Indeed, the Supreme Court has emphasized that "Rule 23's [class] requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that the [federal] rules of procedure 'shall not abridge, enlarge, or modify any substantive right.' " *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997) (quoting 28 U.S.C. § 2072(b).) Holding that defendants' rights vary in mass actions as opposed to class actions runs afoul of the Rules Enabling Act, as Rule 23 simply cannot alter Powerline's substantive rights. *See e.g., Practice Mgmt. Support Services, Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 861-62 (N.D. Ill. 2018) ("[I]t is not clear how [plaintiff] can distinguish the Supreme Court's basic holding in *Bristol-Myers* simply because this is a class action . . . Under the Rules Enabling Act, a defendant's due process interest should be the same in the class context."). Accordingly, this Court should join the well-reasoned decisions that have rejected this argument and apply *Bristol-Myers* to this case.

### C.   The same interstate sovereignty and federalism concerns underpinning *Bristol-Myers* are present here

Plaintiff also cites to decisions that suggest the interstate sovereignty and federalism concerns highlighted in *Bristol-Myers* are not present in matters where a federal question is pending and the case is in federal court. (*See* Opp. at 3.) This argument simply misses the mark and bucks settled personal jurisdiction principles.

*Bristol-Myers* indeed explains that because its decision only "concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers*, 137 S.Ct. at 1783-84.[1] But whether or not there would be constitutional limits on the exercise of personal jurisdiction by federal courts under the Fifth Amendment is, at this point, purely hypothetical, as the Federal Rules of Civil Procedure *require* federal courts to rely on state law, subjecting them to the very same constitutional limits on state courts under the Fourteenth Amendment articulated in *Bristol-Myers*. *See* Fed. R. Civ. P. 4(k)(1). This Rule establishes that a federal court, no less than a state court, simply cannot exert personal jurisdiction over a defendant unless the defendant has minimum contacts with the state in which the court sits.[2] Indeed, many of the Supreme Court's most important Fourteenth Amendment Due Process cases have arisen out of federal court litigation. *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 120-21 (2014) (federal question case); *Burger King Corp. v. Rudzeqicz*, 471

---

[1] As other courts have explained, the Supreme Court leaving this issue open should not be confused with it determining (or even hinting) that *Bristol-Myers* would somehow not apply in federal court. *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017) ("Fitzhenry-Russell confuses the Supreme Court's leaving the issue . . . open with the Supreme Court affirmatively stating that Bristol-Myers necessarily would not apply to federal courts. Because the Bristol-Myers fact pattern did not involve a federal court, there was no reason for the Supreme Court to confront that issue.")

[2] Rule 4(k)(2) provides for a limited exception: where Congress provides for nationwide jurisdiction by statute, the rule allows for nationwide service of process upon defendants. As explained herein, the claims at issue here do not allow for nationwide service of process so the exception does not apply.

U.S. 462, 464 (1985) (diversity case). And this of course is nothing new, as personal jurisdiction in federal courts has been linked to state borders going all the way back to 1789.[3] So it may very well be that Rule 4(k) constrains the exercise of personal jurisdiction more than the Constitution would otherwise require, but the result nonetheless stands. Rule 4(k) thus mandates that federal courts apply the Fourteenth Amendment's analysis requiring that a defendant have minimum contacts with the state in which the court sits, be it state or federal court. Plaintiff simply asks this Court to overlook or ignore Rule 4(k), but unless and until Congress acts, or there is a change to the Federal Rules, the personal jurisdictional reach of federal courts are tied to the jurisdictional reach of the states in which they sit, and thus *Bristol-Myers* fully applies to state and federal courts. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 106 (1987) ("Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress failed to do so here argues forcefully that such authorization was not its intention.").

And so as Powerline pointed out in its Motion, pursuant to Rule 4(k), this Court must look to California law for the limitation on the exercise of personal jurisdiction because the federal statute under which Plaintiff sues—the TCPA—does not authorize nationwide service of process to establish personal jurisdiction. (*See* Motion, Dkt. No. 28 at 3-4.) This Court's personal jurisdiction over Powerline is thus coextensive with that of a California court.[4] As a result, the Fifth Amendment

---

[3] *See* Judiciary Act of 1789, ch. 20 § 11, 1 Stat. 73, 79 ("And no civil suit shall be brought before [the lower federal courts] against an inhabitant of the United States, by any original process in any other district than that whereof he is an inhabitant.").

[4] *See e.g., Rinky Dink, Inc. v. Elec. Merch. Sys. Inc.*, 2014 WL 12103245, at *1, fn.
(footnote continued)

8

does not dictate the parameters of due process in this case.  *See Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 56 (D. Mass. 2018) ("[B]ecause the FLSA does not authorize nationwide service of process . . . this [c]ourt looks to [Massachusetts] law and the Due Process Clause of the Fourteenth Amendment for the applicable limits on its exercise of personal jurisdiction . . . Consequently, the Fifth Amendment does not dictate the parameters of due process in this case.") (internal quotations and citations omitted). As in *Bristol-Myers*, the primary focus of this personal jurisdiction inquiry is Powerline's relationship with the forum state. *See Bristol-Myers*, 137 S.Ct. at 1779-80. So whether the same interstate sovereignty and federalism concerns noted by the Supreme Court in *Bristol-Myers* apply to the same degree in federal court is really beside the point. Federal courts are bound by *Bristol-Myers* because the Federal Rules, and particularly Rule 4(k)(1), require them to apply it.

Plaintiff quotes from *Sloan v. General Motors LLC* for the notion that the same interstate sovereignty concerns animating *Bristol-Myers* simply don't apply when a federal court presides over a federal question. (Opp. at 3.) But again, that analysis simply misses the mark. It may very well be that the interstate federalism concerns play out differently in federal court, but at this point that is a purely hypothetical question as federal courts are bound to apply *Bristol-Myers* by operation of the Federal Rules as outlined above. *See Muir v. Nature's Bounty (DE),*

---

1 (W.D. Wash. Nov. 4, 2014 ("The TCPA, the federal statute at issue, does not provide for nationwide service of process.  47 U.S.C. § 227(e)(6)(E)(ii). . . In the absence of a federal cause of action governing personal jurisdiction, the Court applies Washington law.") (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

*Inc.*, 2018 WL 3647115, at *4 (N.D. Ill. Aug. 1, 2018) (acknowledging the argument articulated in *Sloan*, but explaining that the Federal Rules of Civil Procedure require federal courts to apply the personal-jurisdiction law of the states in which they sit, thus subjecting them to the constitutional limits articulated in *Bristol-Myers*).

Accordingly, this Court should side with the courts that have applied *Bristol-Myers* to federal class actions.  *See e.g., Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.,* 2018 WL 3474444, at *2-4 (N.D. Ill. July 19, 2018) (collecting cases).

### D.    The rationale of *Bristol-Myers* should apply to class actions

Finally, Plaintiff argues that *Bristol-Myers* should not be applied to class actions because the Supreme Court did not expressly address the question of whether its rationale could be applied in the class context and because *Bristol-Myers* did not inaugurate a change in law. (Opp. at 5.) But this argument is unavailing. The Supreme Court did not address the question of whether its opinion would apply to a class action because that issue was not before the Court. *See Bristol-Myers*, 137 S.Ct. at 1779. And the Supreme Court's characterization of its rationale as a "straightforward application . . . of settled principles of personal jurisdiction" does not limit its application to mass torts. As subsequent courts have recognized, "[n]othing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions." *See e.g., Chavez,* 2018 WL 2238191 at *10. That is because *Bristol-Myers* announced a general principle of due process—in cases involving specific jurisdiction, there *must* be a connection between the forum and each plaintiff's claim. *See Bristol-Myers*, 137 S.Ct. at 1781. And courts ordinarily apply the same

10

jurisdictional rules to class actions as they do individual actions. *See In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115 at *9 ("The constitutional requirements of due process do not wax and wane when the complaint is individual or on behalf of a class.  Personal jurisdiction in class actions must comport with due process just the same as any other case."). The Court's demand of a link between the forum state and each out-of-state plaintiffs' claim holds true in individual, mass, or class actions.  *Bristol-Myers* applied settled principles of due process and personal jurisdiction to reject the very same bootstrapping argument advanced by Plaintiff—that one person's claims can supply the jurisdictional contacts necessary to support jurisdiction over another person's claims. (*See* Opp. at 5, 7.) Plaintiff offers no persuasive reason for why these same "settled principles of personal jurisdiction" should not apply with equal force to the class action context.

## II.     The Pendent Personal Jurisdiction Doctrine Is Inapplicable

Plaintiff also argues that this Court can properly exercise pendent personal jurisdiction over Powerline as to the claims of the nonresident class members, even if it would not otherwise have personal jurisdiction over those claims. (Opp. at 5.) However, Plaintiff's reliance on the pendent personal jurisdiction doctrine is misplaced.

Pendent personal jurisdiction applies when a single party asserts multiple claims arising from the same transaction, and courts have nationwide personal jurisdiction over at least one of those claims based on a federal law authorizing nationwide service of process. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Yet here, Plaintiff is seeking pendent jurisdiction over the separate TCPA claims of *other individuals* that admittedly have

11

no connection to California, even though the TCPA does not provide for nationwide service of process. (Opp. at 5.) Plaintiff's attempt to turn a well-established pendent *claim* doctrine into some kind of pendent *party* doctrine should be rejected. Plaintiff offers no sound authority to support such an unwarranted extension of pendent personal jurisdiction, which would blur the distinction between general and specific jurisdiction, circumvent the due process rights of Powerline, and require Powerline to defend claims in California that did not arise out of its activities in that forum.

Moreover, the Supreme Court squarely rejected Plaintiff's bootstrapping argument. (*See* Opp. at 5.) As it explained in *Bristol-Myers*:

> "The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, 'a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction.' This remains true even when the third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents."

*Bristol-Myers*, 137 S.Ct at 1781 (internal citation omitted). Thus, "even if the doctrine at one time permitted the court to exercise personal jurisdiction over a claim like [the nonresident Plaintiff's], it no longer does in light of *Bristol–Myers*." *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 875 (N.D. Ill. 2017).

Plaintiff's reliance on *Action Embroidery,* a pendent *claim*—not pendent *party*—case, is misplaced. (Opp. at 5.) In *Action Embroidery*, the Ninth Circuit determined the District Court had pendent personal jurisdiction with respect to state-law claims when the court had jurisdiction as to the Clayton Act anchor claim through a nationwide service provision. *Action Embroidery*, 368 F.3d at 1180-81. This is an entirely unremarkable application of pendent *claim* jurisdiction. But the

12

Plaintiff's mistake in this case is attempting to translate the rationale of pendent

claim jurisdiction to pendent parties, a result wholly foreclosed by *Bristol-Myers*.[5]

### III. Plaintiff's "Burden" Argument Ignores The Constitutional Limits On Personal Jurisdiction And The Clear Burdens Powerline Will Face Defending A Nationwide Class Action

Plaintiff argues that this Court should nonetheless exercise personal

jurisdiction over Powerline as to the claims of the nonresident class members

because Powerline would not be burdened by defending those claims in California.

(Opp. at 6-7.) As an initial matter, Plaintiff's argument is beside the point—due

process fully protects a defendant even if it "would suffer minimal or no

inconvenience from being forced to litigate" before a court lacking specific personal

jurisdiction. *Bristol-Myers*, 137 S. Ct. at 1780-81. Plaintiff's emphasis on

convenience, burden, and fairness thus turns the constitutional analysis on its head.

A court must first determine whether it has personal jurisdiction without regard to

convenience or burden; only then does it consider such factors in determining

whether it ought to actually exercise such jurisdiction. *Pebble Beach Co. v. Caddy*,

453 F.3d 1151, 1154 (9th Cir. 2006); *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th

---

[5] Again, *Sloan* makes the same mistake. *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 858-59 (N.D. Cal. 2018) (conflating pendent claim jurisdiction with pendent party jurisdiction). And as explained above, *Sloan's* mistake is rooted in its belief that *Bristol-Myers* only applies in state courts, not federal courts. *Id.* But again this ignores Federal Rule of Civil Procedure 4(k). And once one acknowledges that *Bristol-Myers* applies in federal court to the same extent as state court, then even the *Sloan* court would agree that pendent party jurisdiction is disallowed under *Bristol-Myers*. *Id.* (acknowledging its decision is in tension with *Bristol-Myers*, but determining *Bristol-Myers* does not apply in federal courts, only state courts, and thus allowing pendent party jurisdiction).

Cir. 1978).  This is a two-step analysis, yet Plaintiff would have the second step determine the first.

In any event, Plaintiff's suggestion that defending a nationwide class action imposes no additional burdens on a defendant blinks reality. As a TCPA action, Powerline's individualized consent-based defenses will need to be examined as to each putative class member. The task of analyzing the viability of each of those defenses, claimant-by-claimant, undoubtedly grows more burdensome as the class expands. And Powerline would be required to undertake this exercise in a distant forum with no connection to many, if not most, of those class members' claims. Moreover, the prospect of a nationwide class liability exponentially increases the pressure on defendants to settle even meritless claims. As the Supreme Court has long recognized, "the class issue—whether to certify, and if so, how large the class should be—will often be of critical importance to defendants" because "[c]ertification of a large class may so increase the defendant's potential damages liability and litigation costs that [it] may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978).

Plaintiff nonetheless suggests that Powerline should anticipate being hauled into court in California to defend against claims brought by non-California residents arising out of conduct it directed towards other forums solely because it directed some activity to California and Plaintiff's individual claim arises out of that activity. (*See* Opp. at 7.) Again, this is tantamount to the bootstrapping argument the Supreme Court squarely rejected in *Bristol-Myers*; and it otherwise flies in the face

of established personal jurisdiction principles by conflating general jurisdiction with specific jurisdiction.

Plaintiff also suggests that applying *Bristol-Myers* to class actions would lead to the possibility of "duplicative proceedings in as many as 49 other states, all concerning the exact same activity challenged under the exact same federal law." (Opp. at 7.)  But the Supreme Court in *Bristol-Myers* rejected this same "parade of horribles." 137 S.Ct. at 1783-84. The Court observed that its decision did not "prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS." *Id*. The Court also observed that the "plaintiffs who are residents of a particular State—for example, the 92 plaintiffs from Texas and the 71 from Ohio—could probably sue together in their home States." The same can be said here. Limiting nationwide class actions to general jurisdiction forums still allow resident and nonresident plantiffs to join together to pursue a nationwide action in the defendant's home states, and it does not stop such plaintiffs from bringing statewide actions in their home states. *See id.*

## IV.    Powerline's Motion To Strike Is Not Premature

Finally, Plaintiff argues that Powerline's motion to strike Plaintiff's class allegations in the alternative is premature. (Opp. at 8.) However, Rule 12(f) grants courts the authority to strike class allegations where, as here, the putative class has no chance of being certified. *See Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787, at *3 (C.D. Cal. Mar 18, 2015). Applying *Bristol-Myers* to the case at bar, it's clear that this Court lacks personal jurisdiction over Powerline as to the claims of the nonresident class members. It would be far more efficient to trim

the putative class of these nonresident members at this stage of the litigation than to wait until the class certification stage to do so. Accordingly, the Court should strike Plaintiff's nationwide class allegations to exclude the claims of all putative nonresident class members for which the Court cannot exercise personal jurisdiction over Powerline.

## CONCLUSION

For the reasons set forth above, Powerline respectfully requests that the Court grant its motion to dismiss the claims of all putative non-California class members or, in the alternative, strike Plaintiff's class allegations.

Respectfully submitted,

Dated: May 24, 2019                         Defendant Powerline Funding LLC

By: */s/ Alan M. Ritchie*
One of its Attorneys

Alan M. Ritchie (298989)
aritchie@pilgrimchristakis.com
Pilgrim Christakis LLC
321 N. Clark Street, 26th Floor
Chicago, Illinois 60654
Telephone: (312) 924-1773
Facsimile: (312) 379-8547

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

Alan M. Ritchie, an attorney, certifies that on May 24, 2019, he electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

*/s/ Alan M. Ritchie*

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS