Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, California 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **MARIANO BENITEZ**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**POWERLINE FUNDING LLC,** a New York limited liability company,<br><br>*Defendant.* | Case No. 8:19-cv-00098-JLS-DFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT**<br><br>Date:  September 11, 2020<br>Time: 10:30 AM<br>Courtroom: 10A<br>Complaint Filed: January 21, 2019<br>Judge: Hon. Josephine Staton |

    **PLEASE TAKE NOTICE THAT** on Friday, September 11, 2020, at 10:30 a.m. or as soon thereafter as the matter may be heard, counsel for Plaintiff Mariano Benitez ("Plaintiff" or "Benitez") shall appear before the Honorable Josephine L. Staton or any judge sitting in her stead in Courtroom 10A of the United States District Court for the Central District of California located at 411 West Fourth Street, Santa Ana, CA, 92701 and present his Motion to Enforce Settlement.

Plaintiff moves the Court for an Order granting Plaintiff's Motion to Enforce Settlement. This Motion is based on this Notice and Motion, the Memorandum in Support of the Motion and the exhibits attached thereto, oral argument of counsel, and any other matter that may be submitted at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 29, 2020.

Respectfully Submitted,

**MARIANO BENITEZ**, individually and on behalf of all others similarly situated,

Dated: June 12, 2020                By:  */s/ Taylor T. Smith*
                                          One of Plaintiff's Attorneys

Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Steven L. Woodrow (*admitted pro hac vice*)
swoodrow@woodrowpeluso.com
Taylor T. Smith (*admitted pro hac vice*)
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809

*Attorneys for Plaintiff and the Classes*

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES .................................................................................... ii

3  I.      Introduction ...................................................................................................1

4  II.     Legal, Factual, and Procedural Background ...............................................2

5  III.    Argument .......................................................................................................6

6          A.      The Parties Reached An Agreement On All Necessary Terms. .....7

7          B.      The Parties Intended To Be Bound By The Settlement

8                  Agreement. ...........................................................................................9

9  IV.     Conclusion ...................................................................................................11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2  *Callie v. Near*, 829 F.2d 888 (9th Cir. 1987)...........................................................6, 9

3  *City Equities Anaheim, Ltd.*, 22 F.3d 954 (9th Cir. 1994)........................................6

4  *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011)...........6, 7

5  *J & J Sports Prods., Inc. v. Chai*, No. 1:09-CV-00450 AWI, 2010 WL 2991479

6          (E.D. Cal. July 28, 2010), ...................................................................8

7  *Karubian v. Kaiser Ventures, LLC*, No. EDCV 17-597 PSG (EX), 2018 WL

8          10517183 (C.D. Cal. Oct. 17, 2018) ........................................................6, 7

9  *Lee v. Retail Store Employee Bldg. Corp.*, No. 15-CV-04768-LHK, 2018 WL

10         385207 (N.D. Cal. Jan. 10, 2018) ..........................................................7, 8

11 *McKelvey v. Am. Seafoods*, No. C99-2108L, 2000 WL 33179292 (W.D. Wash. Apr.

12         7, 2000) ....................................................................................................8

13 *Sangerman v. Theriault Enterprises Inc.*, No. C-05-04183 RMW, 2007 WL 707502

14         (N.D. Cal. Mar. 6, 2007) ..........................................................................8

15 *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM CTX, 2010 WL

16         9951762 (C.D. Cal. Oct. 18, 2010 ..........................................................9

17 *TH&T Int'l Corp. v. Elgin Indus., Inc.*, 216 F.3d 1084 (9th Cir. 2000)..................10

18 *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986) ........................................6

19 *Walter v. W. Indus. Inc.*, No. SACV131503JLSANX, 2015 WL 12765552

20         (C.D. Cal. Mar. 25, 2015) .......................................................................6

21

22

23

24

25

26

27

28

# I.   Introduction

Roughly one hour before the Parties were scheduled to appear for a discovery dispute telephone conference, an oral agreement was reached to resolve Plaintiff Mariano Benitez's ("Plaintiff" or "Benitez") individual claims against Defendant Powerline Funding, LLC ("Defendant" or "Powerline"). Following the agreement, the Parties informed the Court of the settlement, requested that the Court vacate the discovery conference, and diverted their efforts into memorializing the agreement. Unfortunately, Powerline now claims that it will not go forward with the previously agreed upon settlement.

Despite Powerline's desire to renege, the oral agreement entered into by the Parties is binding and enforceable. First, the oral agreement is straightforward and includes all necessary terms: Powerline agreed to pay Plaintiff an agreed upon single lump sum payment and agree that if it were to engage in telemarketing in the future it would implement policies and procedures to comply with the TCPA. In return, Benitez would release Powerline from any and all claims that may arise out of the same conduct alleged in the Complaint.

Second, the Parties actually intended to be bound by the agreement. Immediately after the agreement was reached, Plaintiff (on behalf of both Parties) informed the Honorable Magistrate Judge McCormick that an agreement was reached and requested that the Court terminate the pending discovery dispute. Moreover, Powerline's own attorney also conceded that the Parties had reached an agreement. Nevertheless, Powerline now refuses to adhere to the agreement. Put simply, both Parties willingly entered into a complete, enforceable settlement agreement.

Accordingly, and as explained below, the Court should grant the instant Motion and enforce the Parties' settlement agreement.

## II.   Legal, Factual, and Procedural Background

### *Pre-Settlement Litigation*

On January 21, 2019, Plaintiff filed his class action complaint against Powerline alleging widespread violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act"). (Dkt. 1.) On April 29, 2019, Powerline moved to dismiss the case arguing that the Court lacked jurisdiction. (Dkt. 28.) The Court denied the motion to dismiss on June 6, 2019. (Dkt. 33.) Thereafter, the Court entered a Scheduling Order (dkt. 37) and the case proceeded to discovery.

On June 21, 2019, Plaintiff served his first set of discovery requests upon Powerline—including interrogatories and requests for the production of documents. (*See* Declaration of Taylor T. Smith ("Smith Decl.") ¶ 3, a true and accurate copy of which is attached here to as Exhibit A.) On September 12, 2019, after the withdrawal of Powerline's second counsel, its current counsel, Ingrid M. Rainey, appeared in the case. (Dkt. 56.) Based on Ms. Rainey's representation that Powerline's prior counsel had not spent any time working on the discovery requests, Plaintiff agreed to an additional extension for Powerline to provide responses to discovery requests. (Smith Decl. ¶ 4.) Eventually, on October 25, 2019, Powerline provided its responses to Plaintiff's first set of discovery requests. (*Id.* ¶ 5.) Unfortunately, Powerline's responses were largely evasive and repeatedly claimed that it did not place telemarketing calls. (*Id.*) Instead, Powerline claimed that a third party vendor, Interimagine, placed all of the calls to Plaintiff. (*Id.*) However, Powerline failed to sufficiently identify Interimagine. (*Id.*)

On November 8, 2019, Plaintiff served a L.R. 37-1 discovery dispute letter on Powerline. (*Id.* ¶ 6.) The Parties conferred and agreed that Powerline would supplement its discovery responses and then agreed to stipulate to a three-month extension of all deadlines. (*Id.*) On December 27, 2019, the Court granted the three-

1   month stipulation and issued an Order Compelling Discovery, which ordered

2   Powerline to turn over sufficient information to identify its third party telemarketer,

3   Interimagine. (Dkt. 63.) To date, Powerline has failed to identify Interimagine.

4   (Smith Decl. ¶ 7.)

5          On January 10, 2020, Powerline provided its supplemental responses to

6   discovery. (*Id.* ¶ 8.) Once again, Powerline provided evasive responses, failed to

7   produce a single responsive document, and failed to adequately identify

8   Interimagine. (*Id.*) Still at an impasse, the Parties then agreed to utilize Magistrate

9   Judge Douglas F. McCormick's informal discovery dispute process. (*Id.* ¶ 9.) Judge

10  McCormick scheduled a telephonic discovery conference on February 21, 2020, at

11  9:30 a.m. (dkt. 64), which was later rescheduled to February 26, 2020, at 9:30 a.m.

12  (dkt. 65).

13  ***Settlement Discussions Begin***

14         Around this time, the Parties' began discussing the possibility of settlement.

15  (Smith Decl. ¶ 10.) Throughout the settlement discussions, Powerline has routinely

16  maintained that it is no longer operational and has limited financial resources. (*Id.* ¶

17  11.) To support this contention, Powerline provided one page of its 2019 tax return.

18  (*Id.* ¶ 12.) The Parties engaged in numerous telephone calls to negotiate a resolution

19  to the case. (*Id.* ¶ 13.) Because Powerline was no longer engaged in telemarketing

20  practices (or operational), the Parties quickly agreed to prospective relief, which

21  would include an agreement to implement reasonable policies and procedures to

22  comply with the TCPA if Powerline were to engage in future telemarketing

23  activities. (*Id.* ¶ 14.) However, the Parties' struggled to reach a resolution of the

24  monetary aspect. (*Id.*)

25         On February 26, 2020, having not reached an agreement, the Parties

26  appeared, via telephone, before Judge McCormick to discuss their ongoing

27  discovery dispute. (Dkt. 66.) Following both Parties' arguments on the dispute,

28

Judge McCormick requested additional information. (Smith Decl. ¶ 15.) Specifically, Judge McCormick requested that Plaintiff provide the Court with a copy of each request, response, and supplemental response relating to Plaintiff's first set of discovery request. (*Id.*) The Court then set a further hearing to discuss the issues on March 5, 2020, at 9:30 a.m. (dkt. 66), which was rescheduled to March 11, 2020, at 11:00 a.m. (dkt. 67).

Following the February 26th hearing, settlement discussions intensified with the exchange of multiple offers. (Smith Decl. ¶ 17.) Throughout the discussions, Powerline repeatedly claimed that it was no longer operational. (*Id.*) With the discovery hearing approaching, Plaintiff's counsel requested that Powerline provide its final offer to settle the dispute. (*Id.* ¶ 18.) On March 10, 2020, Powerline's counsel called Plaintiff's counsel to provide its final settlement offer to resolve Plaintiff's individual claim. (*Id.* ¶ 19.) Powerline would pay the total settlement in one lump sum payment. (*Id.* ¶ 21.)

Shortly before the March 11th discovery hearing, Plaintiff's counsel called Powerline's attorney, Ingrid Rainey, and accepted Powerline's final offer. (Smith Decl. ¶ 20.) During the call, the Parties agreed that Plaintiff's counsel would draft the settlement agreement and Powerline's counsel expressed that the agreement should be executed as soon as possible. (*Id.* ¶ 22.) The Parties also agreed to inform Judge McCormick that an agreement had been reached and the discovery dispute was now moot. (*Id.* ¶ 23.) Plaintiff, on behalf of both Parties, then immediately informed Judge McCormick that the Parties had reached a settlement. (Smith Decl. ¶ 24; *see also* March 11th Email Communications, a true and accurate copy of which is attached hereto as Exhibit B.) The Court then vacated the hearing regarding the Parties' discovery dispute. (Dkt. 68.)

***Post-Settlement Actions***

Thereafter, Plaintiff worked to draft a settlement agreement for Powerline to review. (Smith Decl. ¶ 28.) On March 12, 2020—one day after the Parties reached an agreement—Plaintiff emailed Powerline the first draft of the settlement agreement, which reflected the Parties' agreed upon terms. (*See* March 12, 2020 Email Communication, a true and accurate copy of which is attached hereto as Exhibit C.) The draft settlement agreement accurately reflects the Parties' complete agreement. (Smith Decl. ¶ 29.)

On March 17, 2020, Plaintiff's counsel followed up, via email, regarding when any suggested edits to the agreement could be expected. (*See* Smith Decl. ¶ 31; *see also* March 17, 2020 Email, a true and accurate copy of which is attached hereto as Exhibit D.) Powerline's counsel asked Plaintiff to "be patient as we are in a national emergency." (Smith Decl. ¶ 32; *see also* Ex. D.) Plaintiff's counsel followed up again on April 8, 2020. (Smith Decl. ¶ 33.)

On April 17, 2020 and April 21, 2020, counsel for both Parties had discussions regarding the settlement. (Smith Decl. ¶ 34.) Powerline's counsel informed Plaintiff that Powerline would not go through with the previously agreed dollar amount. (*Id.*) Plaintiff informed Powerline that the Parties had already reached an agreement on the terms of the settlement. (*Id.*) Moreover, the Parties took steps to end the litigation—including stopping all discovery, informing the Court of the settlement, and requesting that Judge McCormick vacate the discovery dispute hearing. (*Id.* ¶ 27.) Counsel for both Parties held additional telephone conferrals regarding the settlement agreement on April 29, 2020 and May 4, 2020. (*Id.* ¶ 35.) Plaintiff informed Powerline that should it not proceed with the settlement along the agreed upon terms, he would move the Court for an Order to enforce the settlement. (*Id.*)

On May 29, 2020, counsel for both Parties conferred by telephone regarding the instant motion. (Smith Decl. ¶ 36.) During the call, Plaintiff reiterated his

intention to file a motion to enforce the settlement agreement based upon the agreed to terms. (*Id.*) Powerline's counsel acknowledged that the Parties had reached an agreement to settle the case for a specific price, however, she stated that she does not believe that her client has any intention to go through with the agreement. (*Id.*)

Based on these facts and as explained below, Plaintiff respectfully requests that the Court enter an Order enforcing the settlement of Plaintiff's individual claims.

## III.   Argument

Under federal law, it is well established that district courts possess the power to enforce settlement agreements entered into by litigants in cases pending before them. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (citing *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C.Cir.1969)) ("[I]t is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it."); *see also TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (citing *In re Suchy* 786 F.2d 900, 902–03 (9th Cir. 1985) ("The district court had inherent power to enforce the agreement in settlement of litigation before it[.]"); *Walter v. W. Indus. Inc.*, No. SACV131503JLSANX, 2015 WL 12765552, at *2 (C.D. Cal. Mar. 25, 2015); *Karubian v. Kaiser Ventures, LLC*, No. EDCV 17-597 PSG (EX), 2018 WL 10517183, at *2 (C.D. Cal. Oct. 17, 2018).

To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citation omitted); *Karubian*, 2018 WL 10517183, at *4. This requires that the parties have reached an agreement on all necessary terms. *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1037-38 (9th Cir. 2011). Second, "all parties must have agreed to the settlement." *Karubian*, 2018 WL 10517183, at *4.

As explained below, both of these requirements are met and the Court should

enforce the agreement to resolve the instant litigation.

### A.    The Parties Reached An Agreement On All Necessary Terms.

The Ninth Circuit has held that an agreement need not contain all "material terms" to be enforceable. *Facebook, Inc.*, 640 F.3d at 1037-38. In doing so, the court drew a distinction between "material terms" explaining that "a term may be 'material' in one of two ways: It may be a necessary term, without which there can be no contract; or, it may be an important term that affects the value of the bargain. Obviously, omission of the former would render the contract a nullity." *Id.* at 1037. However, "a contract that omits terms of the latter type is enforceable under California law, so long as the terms it does include are sufficiently definite for a court to determine whether a breach has occurred, order specific performance or award damages." *Id.* at 1038. The court continued by noting that "[t]his is not a very demanding test[.]" *Id.*

Moreover, under California law, "[w]hen parties orally agree upon all the terms and conditions of an agreement with the mutual intention that it shall thereupon become binding, the mere fact that a formal written agreement to the same effect is to be prepared and signed does not alter the binding validity of the oral agreement." *Karubian v. Kaiser Ventures, LLC*, No. EDCV 17-597 PSG (EX), 2018 WL 10517183, at *5 (C.D. Cal. Oct. 17, 2018) (citation omitted). However, "the moving party must demonstrate that the parties intended to be bound to in the absence of a fully executed agreement." *Id.* (citing *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM CTX, 2010 WL 9951762, at *9 (C.D. Cal. Oct. 18, 2010)).

Indeed, courts have enforced settlement agreements in the absence of a written agreement. In *Lee v. Retail Store Employee Bldg. Corp.*, No. 15-CV-04768-LHK, 2018 WL 385207 (N.D. Cal. Jan. 10, 2018), appeal dismissed, No. 18-15209, 2018 WL 3825472 (9th Cir. July 20, 2018), the court enforced the parties orally

agreement to dismiss the action with both parties bearing their attorneys' fees and costs. *Id.* at *6. In *Lee*, the plaintiffs initially rejected a settlement offer from the defendant for $25,000. *Id.* at *5. The plaintiffs subsequently offered to dismiss the case in totality if each party will bear its own costs and attorneys' fees. *Id.* The defendant accepted the offer to dismiss the action. *Id.* The district court granted defendant's motion to enforce the settlement finding that the parties reached a complete agreement. *Id.* at *6. And this finding is not isolated. Rather, courts routinely enforce oral settlement agreements that have yet to be reduced to a written form. *See J & J Sports Prods., Inc. v. Chai*, No. 1:09-CV-00450 AWI, 2010 WL 2991479 (E.D. Cal. July 28, 2010), report and recommendation adopted, No. 1:09CV00450AWIGSA, 2010 WL 3504869, at *2 (E.D. Cal. Sept. 7, 2010) (enforcing a $5,000 oral agreement to settle an action); *McKelvey v. Am. Seafoods*, No. C99-2108L, 2000 WL 33179292, at *2 (W.D. Wash. Apr. 7, 2000) (enforcing an oral agreement to settle an action for $350); *Sangerman v. Theriault Enterprises Inc.*, No. C-05-04183 RMW, 2007 WL 707502, at *4 (N.D. Cal. Mar. 6, 2007) (enforcing an oral agreement to settle the case for $65,000).

In the present case, the Parties reached a complete agreement. The Parties engaged in substantive negotiations for about a month. Throughout this time, Powerline's counsel repeatedly stressed the need to settle the case because the company possessed limited financial resources. (Smith Decl. ¶ 11.) After Powerline provided Plaintiff some evidence of its financial condition, Plaintiff engaged in negotiations to bring about an end to the litigation. (*Id.* ¶ 13.) Eventually, the Parties reached an agreement to settle Plaintiff's individual claims. Powerline agreed to pay a specific dollar figure and agree to implement policies and procedures to comply with the TCPA if it were to engage in telemarketing in the future. (*Id.* ¶ 21.) In exchange, Powerline would receive a release of all claims that could be brought against it arising out of the same fact pattern that gave rise to the current litigation.

(*Id.*) The payment was to be made in one lump sum payment. (*Id.*) No terms remained to be negotiated. Consequently, it can be said that the Parties reached an agreement with respect to all necessary terms.

Because an agreement was reached as to all necessary terms, the Court should enforce the Parties' oral settlement agreement.

**B.      The Parties Intended To Be Bound By The Settlement Agreement.**

In addition to reaching an agreement on all necessary terms, the parties "must have either agreed to the terms of the settlement or [have] authorized their respective counsel to settle the dispute." *Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL 10274678, at *15 (C.D. Cal. Nov. 13, 2012). Whether the parties intended to be bound by the agreement is a question of fact. *See Callie v. Near*, 829 F.2d 888, 890-91 (9th Cir. 1987) (citation omitted) ("Whether the parties intended only to be bound upon the execution of a *891 written, signed agreement is a factual issue."). And even if an oral agreement "was to be reduced to writing, it is enforceable if the intent that it be binding was manifested by the parties." *See TH&T Int'l Corp. v. Elgin Indus., Inc.*, 216 F.3d 1084, at *1 (9th Cir. 2000).

Here, it is indisputable that the Parties intended to be bound by the settlement. The settlement was the result of a series of counter offers. (Smith Decl. ¶ 17.) Throughout the settlement discussions, Powerline's counsel continually pressed the need for the case to settle because Powerline was no longer operational and counsel not pay any sort of sizeable judgment. (*Id.*) On or around March 10, 2020, Plaintiff's counsel explained that if Powerline wanted to settle the case it would need to make a final offer. (*Id.* ¶ 18.) After conferring with her client, Powerline's counsel submitted a final offer to settle the case. (*Id.* ¶ 19.) On March 11, 2020, Plaintiff accepted the offer via telephone. (*Id.* ¶ 20.) Thereafter, the Parties discussed who should draft the settlement agreement and how to inform the

1    Court that the Parties had reached an agreement. (*Id.* ¶¶ 22-23.) Plaintiff agreed to

2    memorialize the Parties' agreement and to inform Judge McCormick of the

3    agreement. (*Id.*)

4          On March 11, 2020, Plaintiff sent an email to Judge McCormick stated that

5    the Parties had reached a settlement to resolve the litigation and requested that the

6    Court vacate the discovery hearing scheduled for that day. (*Id.* ¶ 24; *see also*

7    Exhibit B.) Powerline's counsel was included on the email and sent a subsequent

8    email to Judge McCormick's clerk thanking her for confirming that no appearances

9    were required for the hearing. (Smith Decl. ¶ 25; *see also* Exhibit B.) Plaintiff

10   would not have agreed to terminate the discovery hearing if he reasonably believed

11   that the Parties had not entered into a binding agreement. (Smith Decl. ¶ 26.) The

12   Parties also ceased all discovery related activities and focused their energy on

13   finalizing the settlement. (*Id.* ¶ 27.)

14         On March 12, 2020, Plaintiff sent Powerline's counsel the draft settlement

15   agreement, which memorialized the Parties' agreement. (*Id.* ¶ 29.) Despite

16   Powerline's counsel's insistence that the agreement be executed as quickly as

17   possible, Powerline provided no edits to the proposed agreement. (*Id.* ¶ 30.) On

18   March 17, 2020, Plaintiff reached out via email to Powerline's counsel regarding

19   the status of the settlement agreement. (*Id.* ¶ 31; *see also* Exhibit D.) Powerline's

20   counsel responded the next day requesting that Plaintiff "[p]lease be patient as we

21   are in a national emergency." (Smith Decl. ¶ 32; *see also* Exhibit D.) On April 8,

22   2020, Plaintiff followed up again to request an update on the status of the settlement

23   agreement. (Smith Decl. ¶ 33.) It was not until on or around April 17, 2020 that

24   Powerline's counsel informed Plaintiff that it would not go through with the

25   Parties' agreement. (*Id.* ¶ 34.) The only explanation offered was that the pandemic

26   had put stress on every business. (*Id.*) It is worth noting that throughout the

27   settlement discussions, Powerline has repeatedly maintained that it is not

28

1   operational. (*Id.* ¶¶ 11, 17.) As such, any suggestion that Powerline was severely
2   affected by the pandemic should be viewed with extreme skepticism.

3          Finally, on May 29, 2020, the Parties conferred regarding the present motion.
4   (Smith Decl. ¶ 36.) During the call, Plaintiff's counsel explained that the Parties had
5   reached an agreement for a specific sum and now Powerline is refusing to pay the
6   agreed upon price. (*Id.*) Powerline's counsel conceded that the Parties had reached
7   an agreement for a specific sum. (*Id.*) Still, she stated that Powerline would not go
8   through with the original agreement. (*Id.*)

9          In short, the Parties intended to be bound by the proposed settlement
10  agreement. Now, seeing an opportunity to avoid payment, Powerline has decided to
11  renege on the agreement. The Court should not indulge Powerline's desires to avoid
12  its obligations. Instead, the Court should find that the Parties intended to be bound
13  by the agreement and enter an Order enforcing the settlement agreement.

14  **IV.    Conclusion**

15         For the foregoing reasons, the Court should grant Plaintiff's Motion to
16  Enforce Settlement. Plaintiff has established that the Parties reached an agreement
17  on all necessary terms and intended to actually be bound by the agreement.
18  Consequently, the Court should enter an Order granting Plaintiff's Motion to
19  Enforce Settlement and for such other relief as this Court deems necessary and just.

20

21                                        Respectfully Submitted,

22                                        **MARIANO BENITEZ**, individually and on
23                                        behalf of all others similarly situated,

24

25  Dated: June 12, 2020            By: */s/ Taylor T. Smith*
                                          One of Plaintiff's Attorneys
26

27                                        Aaron D. Aftergood (239853)
                                          aaron@aftergoodesq.com
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Steven L. Woodrow (*admitted pro hac vice*)
swoodrow@woodrowpeluso.com
Taylor T. Smith (*admitted pro hac vice*)
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809

*Attorneys for Plaintiff and the Classes*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via Court's ECF system on June 12, 2020.

*/s/ Taylor T. Smith*
