# EXHIBIT A

Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1800 Century Park East, Suite 200
Los Angeles, California 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **MARIANO BENITEZ**, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff*,<br><br>v.<br><br>**POWERLINE FUNDING LLC,** a New York limited liability company,<br><br>      *Defendant*. | Case No. 8:19-CV-00098-JLS-DFM<br><br>**DECLARATION OF TAYLOR T. SMITH IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**<br><br>Date: September 11, 2020<br>Time: 10:30 AM<br>Courtroom: 10A<br>Judge: Hon. Josephine Staton<br>Complaint Filed: January 21, 2019 |

I, Taylor T. Smith, declare as follows:

1. I am an associate attorney with the law firm Woodrow & Peluso, LLC and one of the attorneys for Plaintiff Mariano Benitez ("Plaintiff" or "Benitez"). I am over the age of 18 and, if necessary, can competently testify if required to do so.

2. On January 21, 2019, Plaintiff filed the instant action against Powerline Funding, LLC ("Defendant" or "Powerline") alleging wide-scale violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

("TCPA" or "Act"). (Dkt. 1.)

3. On June 21, 2019, Plaintiff served his first set of discovery requests upon Powerline—including interrogatories and requests for the production of documents.

4. On September 12, 2019, after the withdrawal of Powerline's second counsel, its current counsel, Ingrid M. Rainey, appeared in the case. Based on Ms. Rainey's representation that Powerline's prior counsel had not spent any time working on the discovery requests, Plaintiff agreed to an additional extension for Powerline to provide responses to discovery requests.

5. On October 25, 2019, Powerline provided its responses to Plaintiff's first set of discovery requests. Powerline's responses were largely evasive and repeatedly claimed that it did not place telemarketing calls. Instead, Powerline claimed that a third party vendor, Interimagine, placed all of the calls to Plaintiff. However, Powerline failed to sufficiently identify Interimagine.

6. On November 8, 2019, Plaintiff served a L.R. 37-1 discovery dispute letter on Powerline. Shortly thereafter, the Parties conferred and agreed that Powerline would supplement its discovery responses and agreed to stipulate to a three month extension of all deadlines.

7. On December 27, 2019, the Court granted the three-month stipulation and issued an Order Compelling Discovery, which ordered Powerline to turn over sufficient information to identify its third party telemarketer, Interimagine. To date, Powerline has failed to adequately identify Interimagine.

8. On January 10, 2020, Powerline provided its supplemental responses to discovery. Again, Powerline failed to adequately identify Interimagine or provide adequate responses. Instead, Powerline provided evasive responses and failed to produce a single document.

9. The Parties then agreed to utilize the Magistrate Judge Douglas F.

1  McCormick's informal discovery dispute process. After requesting an informal
2  telephone conference, Judge McCormick scheduled a telephonic discovery
3  conference on February 21, 2020, at 9:30 a.m. (dkt. 64), which was later
4  rescheduled to February 26, 2020, at 9:30 a.m. (dkt. 65).

5      10.    Around this time, the Parties' began discussing the possibility of
6  settlement.

7      11.    Throughout the settlement discussions, Powerline has routinely
8  maintained that it is no longer operational and has limited financial resources. As
9  such, Powerline continued to assert that this was a case that should settle.

10     12.    To support its contention, Powerline provided one page of its 2019 tax
11 return.

12     13.    Negotiations then began to explore whether the Parties could reach a
13 settlement. The negotiations consisted of numerous telephone calls to exchange
14 settlement offers.

15     14.    During the negotiations, Plaintiff's counsel explained that Plaintiff
16 needed some form of prospective relief to correct Powerline's telemarketing
17 practices. Because Powerline was no longer operational or engaging in
18 telemarketing, the Parties quickly agreed to prospective relief, which would include
19 an agreement to implement reasonable policies and procedures to comply with the
20 TCPA if Powerline were to engage in future telemarketing activities. The Parties'
21 struggled to reach an agreement with regard to the monetary aspect.

22     15.    On February 26, 2020, having not reached an agreement, the Parties
23 appeared, via telephone, before Judge McCormick to discuss their ongoing
24 discovery dispute. (Dkt. 66.) Following both Parties' arguments on the dispute,
25 Judge McCormick requested additional information. Judge McCormick requested
26 that Plaintiff provide the Court with a copy of each request, response, and
27 supplemental response relating to Plaintiff's first set of discovery requests.
28

16. The Court then set another hearing to discuss the discovery dispute on March 5, 2020, at 9:30 a.m. (dkt. 66), which was rescheduled to March 11, 2020, at 11:00 a.m. (dkt. 67).

17. After the February 26th hearing, settlement discussions intensified with the exchange of multiple offers. Throughout the discussions, Powerline continued to maintain that it was no longer operational.

18. With the discovery hearing approaching, Plaintiff's counsel requested that Powerline provide its final offer to settle the dispute.

19. On March 10, 2020, Powerline's counsel called Plaintiff's counsel to provide its final settlement offer to resolve Plaintiff's individual claim.

20. On March 11, 2020, Plaintiff counsel called Powerline's attorney, Ingrid Rainey, and accepted Powerline's final settlement offer.

21. The settlement was as follows: Powerline agreed to a specific sum and agreed to implement policies and procedures to comply with the TCPA if it were to engage in telemarketing in the future. In exchange, Powerline would receive a release of all claims that could be brought against it arising out of the same fact pattern that gave rise to the current litigation. Powerline agreed to pay the total settlement in one lump sum payment.

22. During the call, the Parties agreed that Plaintiff's counsel would draft the settlement agreement and Powerline's counsel expressed that the agreement should be executed as soon as possible.

23. The Parties also agreed to inform Judge McCormick that an agreement had been reached and the discovery dispute was now moot.

24. Plaintiff, on behalf of both Parties, then immediately informed Judge McCormick, via email, that the Parties had reached a settlement. (*See* Exhibit B.)

25. Powerline's counsel was included on the email and sent a subsequent email to Judge McCormick's clerk thanking her for confirming that no appearances

1 were required for the hearing. (*See id.*)

2     26.    Plaintiff would not have agreed to terminate the discovery hearing if he reasonably believed that the Parties had not entered into a binding settlement agreement.

    27.    At this point, the Parties took steps to end the litigation—including stopping all discovery, informing the Court of the settlement, and requesting that Judge McCormick vacate the discovery dispute hearing.

    28.    Plaintiff worked to draft a settlement agreement for Powerline to review.

    29.    On March 12, 2020—one day after the parties reached an agreement—Plaintiff emailed Powerline the first draft of the settlement agreement, which reflected the Parties' agreed upon terms. (*See* Exhibit C.) The Draft Settlement accurately reflects the Parties' complete agreement.

    30.    Despite Powerline's counsel's insistence that the agreement be executed as quickly as possible, Powerline provided no edits to the proposed agreement.

    31.    On March 17, 2020, Plaintiff's counsel followed up, via email, regarding when any suggested edits to the agreement could be expected. (*See* Exhibit D.)

    32.    Powerline's counsel asked Plaintiff to "be patient as we are in a national emergency." (*See id.*)

    33.    On April 8, 2020, Plaintiff followed up again to request an update on the status of the settlement agreement.

    34.    On April 17, 2020 and April 21, 2020, counsel for both Parties had discussions regarding the settlement. Powerline's counsel informed Plaintiff that Powerline would not go through with the previously agreed settlement amount. The only explanation offered was that the pandemic had put stress on every business.

Plaintiff informed Powerline that the Parties had already reached an agreement on the terms of the settlement.

35. Counsel for both Parties held additional telephone conferrals regarding the settlement agreement on April 29, 2020 and May 4, 2020. Plaintiff informed Powerline that should it not proceed with the settlement along the agreed upon terms, he would move the Court for an Order to enforce the settlement.

36. On May 29, 2020, counsel for both Parties conferred by telephone regarding the instant motion. During the call, Plaintiff reiterated his intention to file his motion to enforce the settlement agreement based upon the agreed to terms. Powerline's counsel acknowledged that the Parties had reached an agreement to settle the case for a specific sum, however, she stated that she did not believe that her client has any intention to go through with the agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 12, 2020, in Denver, Colorado.

By: /s/ Taylor T. Smith
Taylor T. Smith